UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CHRISTOPHER HOWARD, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3: 13-CV-550 |
| | ) | JUDGE TRAUGER |
| CHRIS FULCHER, | ) | |
|     Defendant. | ) | |

## **Memorandum**

This case is before the court on Defendant Chris Fulcher's motion for summary judgment. For the reasons articulated herein, the motion will be granted.

### **FACTUAL AND PROCEDURAL HISTORY**

On July 28, 2012, the plaintiff was arrested in Cheatham County, Tennessee, and charged with domestic assault against Shonda Carver. Based on findings that the plaintiff was "a threat to the alleged victim or other family or household member" and also "a threat to the public safety," the commissioner conditioned his release on bond on the following: (1) "The defendant is enjoined from threatening to commit or committing specified offenses against the alleged victim or other family or household member. No unlawful contact;" (2) "The defendant is prohibited from harassing [or] annoying the alleged victim either directly or indirectly;" (3) "The defendant is prohibited from using or possessing a firearm or other weapon specified by the court;" and (4) "The defendant is prohibited from using or consuming alcohol or controlled substances." (ECF 55-1 at 9.) The commissioner also required that plaintiff be held in jail for twelve hours before release "to protect the safety of the alleged victim and to ensure the appearance of the defendant in court." (Id.) The commissioner made these findings and imposed these restrictions on a pre-printed form entitled "Order Granting Bail for Domestic Abuse Cases," with check marks next to

the above pre-printed conditions. The commissioner did not put a check by the requirement that the defendant stay away from the home of the alleged victim or from any other location where the victim would be likely to be. (Id.) The plaintiff's signature appears at the bottom of this form order. (Id.)

This order setting bond conditions led to a record in the National Crime Information Center ("NCIC") database indicating that there was a "temporary order of protection" in effect against the plaintiff. (ECF 27-3, 27-12, 27-16.) Based on this NCIC record, the plaintiff was arrested on four different occasions in 2012 in White Bluff, Tennessee, which led to this lawsuit. The plaintiff's original complaint and amended complaint were filed *pro se* and *in forma pauperis* and named as defendants the three police officers who made these arrests and their police chief. In March 2014, the parties entered stipulations that the claims raised against two of the officers (Officers Hopper and Dorland) and against the police chief (Chief Holman) would be dismissed with prejudice. Thus, the only remaining defendant in this matter is Officer Chris Fulcher. The involvement of the previously-named defendants will be discussed herein, however, because the arrests made by the other officers provide useful context to the arrests made by Officer Fulcher.

The first arrest of which the plaintiff complained in his original and amended complaints occurred on October 3, 2012, when Officer Hopper, a police officer in White Bluff, Tennessee, spoke with Ms. Carver, who stated that the Plaintiff had been harassing her in violation of the order of protection that had been issued in Cheatham County. (ECF 26 at ¶ 1.)[1] Officer Hopper

---

[1] The court will deem the defendant's statements of undisputed facts to which the plaintiff did not respond to be true.

checked the NCIC database, which contained the name and description of the plaintiff, along with the following notation:

> Temporary Protection Order . . . The subject is restrained from assaulting, threatening, abusing, harassing, following, interfering, or stalking the protected person and/or the child of the protected person. . . . Exparte [sic] order granting bail * served by deputy Phil Curran on July 28, 2012 * no unlawful contact * The defendant is prohibited from harassing and annoying the alleged victim either directly or indirectly * The defendant is prohibited from possessing or consuming alcohol or controlled substances * to be held in jail for 12 hours before release on bond to protect the safety of the alleged victim and to ensure the appearance of the defendant in court * . . . The subject may not threaten a member of the protected person's family or household. The subject is prohibited from possessing and/or purchasing a firearm or other weapon.

(ECF 26 at ¶ 2; ECF 27-3.)

When Officer Hopper arrived at Ms. Carver's house, she informed him that the plaintiff had come to her home that evening highly intoxicated, had threatened to "beat the hell" out of her, had threatened to "blow [the] brains out" of her male neighbor who was present in her home, had called numerous times, and had sent about thirty text messages. (ECF 26 at ¶¶ 3-4; ECF 32-3.) The following day, Officer Hopper obtained an arrest warrant based upon his Affidavit of Complaint that set forth as probable cause the statement of Ms. Carver and the information in the NCIC record that the plaintiff was in violation of his bond restrictions. ((ECF 26 at ¶¶ 5--6 6; ECF 27-5; ECF 26-6.) On December 17, 2012, the plaintiff pled guilty to this charge. (ECF 27-19.)

The parties agree that, on November 19, 2012, Officer Fulcher was dispatched to Ms. Carver's residence, where he found the plaintiff drinking a beer and clearly intoxicated. (ECF 51 at ¶ 7.) The parties also agree that the plaintiff had broken a window next to the door to gain entry to the residence and that he could not provide any proof that he lived there. (Id.) Police

3

Chief Holman also was present at this arrest, having been called by Officer Fulcher for assistance based on the plaintiff's level of intoxication and statements Officer Fulcher claims were made by the plaintiff that made him feel it was prudent to have another officer present. (ECF 27-7, 27-21.) Officer Fulcher asserts that he checked the NCIC database, discovered that the order of protection against the plaintiff was still in effect, and placed the plaintiff under arrest for violating the protective order. (ECF 26 at ¶¶ 8—9.) The plaintiff disputes this, alleging that Officer Fulcher never checked the NCIC database and has never seen an order of protection. (ECF 51 at ¶ 8.)

The crux of the plaintiff's complaint against Officer Fulcher for the November 19, 2012 arrest is the officer's explanation in his deposition that, when he and other officers check to see if there is a valid order of protection, that consists of making a call to Central Dispatch but not personally looking at an NCIC report. He explained that officers have no direct access to NCIC in the field. (ECF 52-1 at 7-9, 15; ECF 55-2 at 28.) Accordingly, Officer Fulcher obtained the information that the plaintiff was subject to a restraining order from Central Dispatch and had not, prior to the date of the deposition, personally seen the NCIC report. When asked in the deposition what had caused him to believe there might be an order of protection against the plaintiff, the officer stated that he had been involved in plaintiff's earlier arrest in Cheatham County. (Id. at 9.)

The parties agree that, on November 21, 2012, Officer Fulcher again received several complaints that the plaintiff was intoxicated at Ms. Carver's house and that, upon his arrival, Officer Fulcher heard the plaintiff and Ms. Carver arguing loudly. (ECF 51 at ¶¶ 10—11.) Again, the parties disagree about whether Officer Fulcher checked the NCIC database and discovered a valid order of protection. (Id. at ¶ 12.) Officer Fulcher claims he did so. (ECF 26 at ¶12.) Officer

Fulcher did not arrest the plaintiff on this date because the plaintiff was bleeding and indicated that he needed to be transported to the hospital. (ECF 55-1 at 121.) Officer Fulcher called an ambulance, which transported the plaintiff to the hospital.

The crux of the plaintiff's claim against Officer Fulcher about the November 21, 2012 incident seems to lie in the assertions made in Ms. Carver's affidavit. She states that, on November 22, 2012, she had a telephone conversation with Officer Fulcher in which he asked her if there was an order of protection from Cheatham County, to which she responded that there was not. (ECF 52-2 at 2.) She further alleges:

> . . . Officer Fulcher told me that the day before he had called Cheatham County himself and spoke with an officer he knew and she confirmed that there was one. Unfortunately when he went back to do his paperwork, nearing the end of his shift, he was told by another officer that he couldn't give him some type of confirming code that Officer Fulcher needed because there was no order of that sort and the person he had originally spoken with had already left for the day. According to Fulcher, "it was like it vanished into thin air". [sic] He then asked "please don't tell anyone about this through [sic] because it could get me into a lot of trouble." I agreed that I would not tell anyone.

(Id.) Ms. Carver further alleges that, on November 21, 2012, Officer Fulcher told her she should quit dating plaintiff and start dating him and that Officer Fulcher had been making romantic advances toward her for the previous two months. (Id.)

On December 7, 2012, Officer Fulcher obtained an arrest warrant based on the November 21st incident, which Officer Dorland took the same day to Ms. Carver's home to serve on the plaintiff. Officer Dorland discovered that the plaintiff was at the residence, clearly intoxicated. (ECF 26 at ¶ 14.) Officer Dorland checked the NCIC database and found that an order of protection was still in effect. (Id. at ¶ 15.) Officer Dorland arrested the plaintiff based on the warrant related to the November 21st incident. (Id. at ¶ 16.) On December 9, 2012, Officer

5

Dorland obtained another arrest warrant based on plaintiff's being intoxicated on December 7, 2012, and that warrant was served on the plaintiff in jail. (Id.)

On December 17, 2012, the charges from the four arrests were resolved in the same plea agreement. The plaintiff pled guilty to the incident that occurred on October 3, 2012. The guilty plea form notes for each of the other three charges: "dismissed on the basis of: nolle." (ECF 1 at 5.) For the October 3, 2012 charge, the plaintiff was fined $236 and sentenced to eleven months and twenty-nine days, which were to be suspended after completion of an alcohol rehabilitation program of at least 28 days in duration. (Id.) On January 28, 2013, a document was entered in the criminal case which states, "Alleged Victim, Shonda Carver, appeared in court on 01-28-13 and requested relief from no contact orders imposed in these cases. [Defendant] completed residential A&D [alcohol and drug] program. (ECF 27-20 at 8.)

The White Bluff Municipal and General Sessions court docket sheet indicates the resolution of these four cases and also has the following note, signed by Carol Harmon, Court Clerk:

> Note: These 4 cases were orinally [sic] disposed of in our court on 12-17-12. They were appealed to Dickson County Circuit Court which remanded them back to this court. The Judge confirmed his original decision on 3-25-13. A Dickson County Sheriff's deputy arrested Mr. Howard for a violation of bond conditions prior to our arrest for a 10-4-12 violation. I don't know how that case was resolved in Dickson County General Sessions Court.

(ECF 27-19.)

Although the court does not find any documentation in the record, the parties are in agreement that, on December 3, 2012, a "no true bill" was returned in the original July 28, 2012 domestic violence case. (ECF 1 at 2; ECF 54 at 3.)[2]

---

[2] Although the "no true bill" was returned on December 3, 2012, the case was not formally dismissed until February 15, 2013. (ECF 55-3.) Pursuant to Tenn. Code Ann. § 40-11-150(c)(2), concurrent with the

On February 11, 2013, the plaintiff filed a White Bluff Citizen Complaint Form alleging that he had been harassed by the three arresting officers originally named as defendants in this action. (ECF 27-20.) White Bluff Police Chief Holman investigated all four arrests and determined that, at the time of each arrest, the plaintiff was under an order of protection, that each arrest was based on probable cause, that the arresting officers obtained an arrest warrant each time, and that on each incident the plaintiff was taken before a White Bluff Court magistrate and given a date to answer the charges. (ECF 26 at ¶ 17; ECF 27-22.)

## PROCEDURAL HISTORY

The plaintiff has already filed three separate cases in this court seeking damages against various defendants based on these arrests. On June 6, 2013, he filed a *pro se, in forma pauperis* complaint against White Bluff General Sessions Court, the Court Clerk, and a Magistrate, seeking monetary damages and for the court to dismiss state criminal charges against him and to expunge his state criminal record. 3:13-CV-549. On June 20, 2013, Judge Campbell of this court

---

imposition of one or more conditions of release, the magistrate shall "immediately distribute a copy of the order to the law enforcement agency having custody of the defendant, which agency shall file and maintain the order in the same manner as is done for orders of protection[.]" Accordingly, it appears that the actions taken in this matter followed the proper legal channels. Presumably, the Cheatham County General Sessions magistrate notified the Cheatham County Sheriff's Department, which in turn entered the bond restrictions into the NCIC database. Once the defendant is "for any reason discharged or released from those conditions, the discharging or releasing court shall notify all law enforcement agencies within its jurisdiction that the defendant is no longer subject to the conditions originally imposed." Tenn. Code Ann. § 40-11-150(j)(1). Thus, upon plaintiff's being released from the bond conditions, it would have been the duty of the Cheatham County court to notify the Cheatham County Sheriff's Department, which in turn would update the NCIC database to reflect that conditions were no longer in place. Officer Fulcher has provided a copy of the NCIC reports from October 3, 2012, December 5, 2012, and December 7, 2012, and each of these contains the phrase "temporary restraining order" and the list of restraints on plaintiff's conduct. (ECF 32-3; 32-5; 32-6.)

found that this complaint failed to state a claim upon which relief can be granted and dismissed it *sua sponte*.[3]

On June 6, 2013, the plaintiff filed another *pro se, in forma pauperis* complaint against the Cheatham County General Sessions Court and the Circuit Court of Cheatham County, seeking damages based on an allegation that these defendants held records that mistakenly indicated that he was the subject of an order of protection, which he claimed caused him to be falsely arrested. 3:13-CV-551. On June 12, 2013, Judge Sharp of this court found that the plaintiff had failed to state a claim upon which relief could be granted and dismissed the case *sua sponte*.

On June 13, 2013, the Plaintiff filed his third *pro se, in forma pauperis* complaint, this time against the Cheatham County Sheriff's Department, the Cheatham County Deputy Sheriff who arrested him on July 28, 2012, and a Cheatham County Commissioner who issued the warrant for his arrest and entered the order setting bond conditions. 3:13-CV-573. Judge Sharp again found that the plaintiff had failed to state a claim upon which relief could be granted and dismissed the claims *sua sponte*.

The plaintiff filed this case *pro se* and *in forma pauperis* on June 6, 2013, the same day that he filed the first two cases cited above. The plaintiff's complaint originally brought claims against the White Bluff Police Department, in addition to the three officers who arrested him and the police chief. On June 24, 2013, this court found that the complaint failed to state a claim for which relief could be granted as to the White Bluff Police Department and dismissed the claims against that defendant. Finding that the complaint stated potentially colorable claims under 42

---

[3] The court must screen *in forma pauperis* complaints pursuant to 28 U.S.C. § 1915(e)(2) to determine if the complaint contains claims that are frivolous, malicious, or fail to state claims upon which relief can be granted.

U.S.C. § 1983 against the remaining four defendants, the court directed the Clerk to issue process to those defendants and referred the case to the Magistrate Judge. On September 30, 2013, the court granted the plaintiff's unopposed *pro se* motion to amend his complaint. On October 16, 2013, the defendants filed a motion for summary judgment. On January 9, 2014, counsel entered an appearance on behalf of the plaintiff in this case, filed a motion to amend the scheduling order to permit discovery by the plaintiff, and also filed a motion to extend the time to respond to the pending defendants' motion for summary judgment. Over defendants' objection, the court granted the plaintiff's motions. On March 24, 2013, the court denied the plaintiff's motion to file a second amended complaint.

## ANALYSIS

**I.     Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) requires the court to grant a motion for summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In evaluating the evidence, the court must draw all inferences in the light most favorable to the [plaintiff]." *Moldowan*, 578 F.3d at 374.

"[T]he judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial." *Id.* (quoting *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient," and the plaintiff's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 249, 252. An issue of fact is "genuine" only if a reasonable jury could find for the plaintiff. *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## II. Defendant Chris Fulcher

The plaintiff's Amended Complaint raises the following claims against Officer Fulcher: (1) violation of substantive and procedural due process guaranteed by Fifth and Fourteenth Amendments for arresting him for violation of order of protection while having actual knowledge that no protective order existed and having failed to verify existence of protective order; (2) violation of Fourth Amendment right to be free from unreasonable seizure. (ECF 22.) Although the plaintiff acknowledges in his response to Officer Fulcher's motion for summary judgment that "his claims under the Fourth and Fourteenth Amendment are not supported by the record" (ECF 52 at 2 n. 3),[4] the plaintiff's only argument in response to the motion for summary judgment is that Officer Fulcher did not have probable cause to arrest him on November 19, 2012, or to issue a warrant for him on December 7, 2012, based on the incident on November 21, 2012. (Id.) Of course, the claim that an arrest was not supported by probable cause *is* a Fourth Amendment claim, although in the short space the plaintiff devotes to his legal argument on this claim in his brief, he never mentions the Fourth Amendment. Nonetheless, because it appears

---

[4] The plaintiff's *pro se* Amended Complaint also raised a Fifth Amendment claim, but, given that the plaintiff does not address this in his response to the motion for summary judgment, it appears that he has abandoned this claim as well.

that the plaintiff did not intend to abandon his Fourth Amendment claim that he was arrested without probable cause, the court will address it.

The Fourth Amendment provides the right to be free from arrest without probable cause. "Probable cause to make an arrest exists if the facts and circumstances within the arresting officer's knowledge 'were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense.' " *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir.1995) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)) (alteration in original). The existence of probable cause "depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *United States v. Pearce*, 531 F.3d 374, 380–81 (6th Cir. 2008) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)).

Officer Fulcher is correct that both Tennessee and federal courts have held that NCIC reports are sufficient to support probable cause for an arrest. *See, e.g.*, *United States v. McDonald*, 606 F.2d 552, 553--54 (5th Cir. 1979) ("While NCIC printouts are not alone sufficient Evidence to permit Conviction, the cases uniformly recognize that NCIC printouts are reliable enough to form the basis of the reasonable belief which is needed to establish probable cause for arrest."); *U.S. v. Davis*, 568 F.2d 514, 516 (6th Cir. 1978) ("An NCIC identification of a vehicle is sufficient to establish probable cause for the arrest of one possessing it."); *U.S. v. Williams*, 440 F.2d 1235 (6th Cir. 1971) (upholding an arrest based on an NCIC computer check confirming that vehicle had been reported as stolen); *State v. Rhymer*, 915 S.W.2d 465, 468 (Tenn. Ct. Crim. App. 1995) (fact that NCIC information relied upon by the officer turned out to be incorrect did not preclude officer's use of the information as a basis for reasonable suspicion, absent bad faith).

For the arrest on November 19, 2012, Officer Fulcher testified that he called Dickson Central Dispatch to run an NCIC database check on the plaintiff and spoke to Dispatcher Lampley, who informed him that there was an active order of protection on the plaintiff out of Cheatham County. (ECF 55-2 at 9-10; ECF 27-7 at ¶ 6.) The plaintiff appears to be of the opinion that his assertion that Officer Fulcher did not personally look at the NCIC report or the order of protection creates a genuine issue as to a material fact, but it does not, because the manner in which the officer checked the NCIC report is not material to this issue. In fact, Officer Fulcher does not dispute that this is what happened. The officer's awareness that there was a protection order, as indicated by Central Dispatch, coupled with his observations of plaintiff's conduct, were sufficient to establish probable cause for the arrest.

As for the arrest warrant taken out on December 7, 2012, for the events that took place on November 21, 2012, the plaintiff's position appears to be that there was not probable cause for that arrest based on the statements that Ms. Carver alleges Officer Fulcher made to her. For purposes of summary judgment, the court assumes it is true that Officer Fulcher told Ms. Carver that he had been unable to get a code confirming the existence of a protection order because "another officer" had said that there was no "order of that sort and that the person he had originally spoken with had already left for the day." (Id.) Officer Fulcher did not arrest plaintiff on November 21, 2012, and instead made arrangements for him to be taken to the hospital. However, Officer Fulcher states that, on December 5, 2012, he contacted Dickson County Central Dispatch and had them check the NCIC database again to ensure the order of protection was still in place. Officer Fulcher has presented the NCIC report from December 5, 2012 as evidence. (ECF 27-12.) The printout has written "Temporary Protection Order" on the top of the first page, has Chris Fulcher's name on it, indicates he is with the White Bluff Police, and

contains this request: "Can you confirm if this order is still active. Subject has been found to be around protected party." (Id. at 3.) The NCIC report further indicates that the Cheatham County Sherriff's Department is the confirming agency. (Id.) Under "remarks" it states, "This is a valid hit and the protection order is still active. . . . "(Id. at 2.) It also has the name Kerry Lampley on it, consistent with Officer Fulcher's deposition testimony. (Id. at 3.) Even assuming that the Officer had a problem getting a confirmation number on November 21, 2012, and that someone told him that there was no such order, the plaintiff has no evidence about what happened after that. Officer Fulcher has presented evidence that he checked again to verify the existence of the order on December 5, 2012 before taking out the arrest warrant, and the plaintiff has no evidence to dispute this fact.

Whether the "temporary restraining order" language used in the NCIC reports was actually a mistake or is the way NCIC labels bond conditions that impose the types of restraints on a person that are typical of temporary restraining orders is of no consequence. The information provided to Officer Fulcher by the Dickson County Central Dispatch that the NCIC report indicated the existence of a temporary restraining order, coupled with his observation of plaintiff's behavior, were "sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." *Rhymer*, 915 S.W.2d at 468; *see also, U.S. v. Anderson*, 923 F.2d 450, 457 (6th Cir. 1991) ("Our conclusion [that there was probable cause] would not be disturbed even if the evidence clearly showed that the officers subjectively believed that they did not have probable cause to arrest because the subjective belief of the arresting officer is irrelevant in determining whether probable cause exists.").

Because Officer Fulcher had probable cause to arrest the plaintiff on November 19, 2012 and November 21, 2012, he did not violate the plaintiff's Fourth Amendment rights.

Furthermore, the fact that the plaintiff was technically guilty of violating the bond conditions on his pending domestic violence charge, rather than violating an order of protection, as charged, is of no consequence. The Sixth Circuit has held that "knowledge of the precise crime committed is not necessary to a finding of probable cause provided that probable cause exists showing that a crime was committed by the defendants." *United States v. Anderson*, 923 F.2d 450, 457 (6th Cir. 1991).

Further, even assuming that a Fourth Amendment violation occurred, Officer Fulcher would be entitled to qualified immunity. The Supreme Court has set forth a two-part inquiry for determining whether qualified immunity will operate as an "immunity from suit" in a given case. "[T]he first inquiry must be whether a constitutional right would have been violated on the facts alleged; second, assuming the violation is established, the court must address whether the right was clearly established . . . on a . . . specific level." *Saucier v. Katz*, 533 U.S. 194, 200 (2001). Assuming a constitutional violation is established, the court must undertake the second inquiry to determine whether the violation was clearly established at the time of the official's actions. "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. . . . 'The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Saucier*, 533 U.S. at 202 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). It would not be clear to a reasonable officer that he was not entitled to rely on information provided by Central Dispatch about an NCIC report, coupled with observations of the types of behavior the plaintiff was engaging in on the dates in question, to determine that probable cause existed to arrest the plaintiff. Thus, even if there had been a constitutional violation in this case, Officer Fulcher would be entitled to

qualified immunity. Accordingly, the court will grant summary judgment to Officer Fulcher in this case.

## CONCLUSION

For the foregoing reasons, the court will grant Defendant Officer Fulcher's motion for summary judgment. An appropriate order shall issue.

_____
ALETA A. TRAUGER
UNITED STATES DISTRICT JUDGE